OPINION OF THE COURT
Kenneth L. Thompson, Jr., J.
Petitioner’s order to show cause pursuant to article 78 of the Civil Practice Law and Rules for a writ of prohibition enjoining the respondents from conducting a polygraph examination of petitioner on the ground that it would violate petitioner’s right against self-incrimination is denied.
Petitioner’s request to have his parole supervision terminated, and be allowed to move out of state is also denied.
*188 Petitioner is a parolee in the care and custody of the New York State Division of Parole (the Division), and supervised by parole officers located in Bronx County, New York, at the Bronx 2 Area Office. (Verified answer, exhibit A, Rissing aff 1Í1.) He is currently serving a 7V2-to-15-year sentence for a number of felonies, with his maximum expiration date being July 19, 2014. {Id. If 4.) Prior to his release from prison on October 17, 2007, the Board of Parole (the Board) imposed the standard conditions of release, as well as several special conditions, one of which was a requirement that he submit to periodic polygraph examinations. {Id. If 6.) Petitioner agreed to comply with the standard conditions connected to his release, in addition to the special conditions of release, which included the periodic polygraph examinations. {Id.)
The polygraph requirement resulted from petitioner’s 1962 arrest for kidnapping and rape, which resulted in a conviction for third-degree assault and a one-year prison sentence. {Id. If 7.) This conviction resulted in petitioner being designated by the Division as a “Discretionary Sex Offender.” {Id. 1Í 8.) This designation subjects petitioner to more rigorous and intensive terms of parole supervision than would otherwise prevail — for example petitioner is currently reporting biweekly, as opposed to on a monthly basis. {Id. U 9.)
The purpose of the polygraph examination is to: “facilitate honest communication between Division employees and the parolees they supervise.” {Id. U 10.) It also assists the Division in determining: whether a parolee is likely to recidivate {id.); the appropriate level of supervision a parolee may require {id.); and whether a parolee presents a danger to himself or others {id.). In this specific case, the examination was required to aid the Division in determining whether petitioner should remain supervised as a discretionary sex offender, or whether he should be reclassified for regular parolee supervision. {Id. If 11.) The examination is intended to detect untruthfulness, and not to discover evidence to be used against petitioner at a subsequent parole revocation proceeding. {Id.)
Petitioner was scheduled to take the examination on August 29, 2005. {Id. U 12.) He was informed that the purpose of the examination was to determine whether he was in compliance with the conditions of his release. {Id.) He was also told that any statements made could not be used against him in a parole revocation proceeding. {Id.) Petitioner attended the examination, however, he refused to answer any questions. {Id. 1Í13.) The ex *189 amination was rescheduled, and petitioner was warned that failure to comply could result in the revocation of his parole. (Id.) Prior to the rescheduled examination, petitioner filed this application. (Id. IT 14.)
Petitioner argues that “forcing him to commit to Polygraph Interview Under Color of Law, [is] in direct violation of [his] Guaranteed Rights Under the Fifth Amendment of the United States Constitution.” (Aff in support 11 4.) He further requests that his parole supervision be terminated and he be allowed to move out of state.
Petitioner’s application is denied in its entirety because: (1) he failed to seek administrative appeal of the special condition at issue here; (2) the court lacks a sufficient basis to review petitioner’s parole determination; (3) despite the availability of a Fifth Amendment challenge to incriminating responses given during a polygraph examination, the Board may still revoke the petitioner’s parole if he refuses to answer questions posed during the examination; and (4) there is no legal basis to terminate his parole or to allow him to move out of state at this time. Administrative Remedies
Petitioner failed to administratively appeal the initial institution of special conditions imposed by the Board, which included the polygraph requirement. Consequently, his application must be denied for failing to utilize and exhaust his administrative remedies. (See Matter of Pina v Hammock, 89 AD2d 799 [4th Dept 1982] [denying petitioner’s article 78 petition because he failed to appeal his denial of release]; People ex rel. Cotton v Rodriquez, 123 AD2d 338, 339 [2d Dept 1986]; see also Watergate II Apts, v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978] [holding that “one who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law”].)
Judicial Review
Petitioner’s application is devoid of any allegations that the Board’s parole determination regarding his special conditions was improper, unfair and impartial, determined without appropriate basis, violative of lawful procedure, or arbitrary and capricious. Therefore, there is no basis for this court to review its determination regarding the conditions of petitioner’s parole. (See Executive Law § 259-i [1], [2]; see also Matter of Hines v State Bd. of Parole, 293 NY 254, 257 [1944] [holding that “the action of the Board in releasing or refusing to release prisoners shall not be reviewable if in accordance with law. Thus so long *190 as the Board violates no positive statutory requirement, its discretion is absolute and beyond review in the courts”]; Tarter v State of New York, 113 AD2d 587, 592 [1st Dept 1986] [holding that “(t)he crucial inquiry ... is whether the action of the Parole Board in releasing the prisoner was ‘in accordance with law’ (Executive Law § 259-i [5]) and, if so, the decision is deemed a judicial function and is not reviewable”].)
The Fifth Amendment and Polygraphs
Despite respondents’ arguments — that the results of a polygraph examination are not legally admissible into evidence in the State of New York — an individual subjected to supervised release may claim his or her Fifth Amendment protection against self-incrimination in connection with polygraph examinations conducted pursuant to conditions attached to that release. (See e.g. United States v Johnson, 446 F3d 272, 278 [2d Cir 2006]; United States v Antelope, 395 F3d 1128 [9th Cir 2005]; United States v Zinn, 321 F3d 1084 [11th Cir 2003]; United States v Davis, 242 F3d 49 [1st Cir 2001].) This does not erase the fact that petitioner is still subject to having his parole revoked should he refuse to answer questions because “revocation is an administrative decision that may be made based on a refusal to answer relevant questions, so long as the administrator does nothing to impair the later invocation of the privilege.” (Johnson at 280; see also Asherman v Meachum, 957 F2d 978, 982-983 [2d Cir 1992].) Ergo, petitioner maintains his “right to challenge in a court of law the use of [incriminating] statements [during a polygraph examination] as violations of his Fifth Amendment rights,” however, he exposes himself to the revocation of his parole for failing to comply with the special conditions of his supervised release. (<Johnson at 280.)
Parole Termination
“Persons presumptively released, paroled, conditionally released or released to post-release supervision from an institution under the jurisdiction of the department of correctional services or the department of mental hygiene shall, while on presumptive release, parole, conditional release or post-release supervision, be in the legal custody of the division of parole until expiration of the maximum term or period of sentence, or expiration of the period of supervision, including any period of post-release supervision, or return to the custody of the department of correctional services, as the case *191 may be.” (Executive Law § 259-i [2] [b].)
Pursuant to this statute, petitioner’s parole is lawful and he has not proffered a sufficient basis for its termination prior to July 19, 2014 or upon the occasion of his return to the custody of the Department of Correctional Services. Additionally, respondents contend that petitioner’s request to move out of state is currently under review, and that no final determination has been made as to that request. As such, that issue may not be presented to the court in these proceedings. (See CPLR 7801 [1] [stating that “a proceeding under this article shall not be used to challenge a determination . . . which is not final”].)